Staunton.

WAMPLER V. HARRELL AND OTHERS.

· September 14, 1911.

Absent, Buchanan, J.

1.  EVIDENCE—*Record of Another Suit Between Other Parties.*—In a
    suit by the grantor in a deed against the grantee to have the
    deed set aside on account of the want of mental capacity of
    the grantor to make the deed, the record of a prior suit by
    the grantor against other parties, involving transactions hav-
    ing no bearing on the present suit, and to which the grantee
    was not a party, and by the proceedings wherein or the results
    whereof he is not bound, is not admissible in evidence.

2.  EVIDENCE—*Mental Capacity—Witnesses to Factum—Other Wit-
    nesses.*—Where the mental capacity of a grantor in a deed is
    at issue, the testimony of those who were present at the *factum*
    is chiefly regarded, and held to be more reliable than the opin-
    ions of other witnesses having little acquaintance with the
    grantor, and who reach conclusions having no substantial basis
    for support in either fact or reason.

3.  *Mental Capacity—Test.*—No particular degree of mental acumen
    is to be prescribed as the measure of one's capacity to execute
    deeds or wills.  The test is whether the party had, at the time
    of the execution of the instrument, sufficient mental capacity
    to understand the nature of the transaction he was entering
    into, and to assent to its provisions.

4.  DEEDS—*Consideration—Agreements for Support—Bill to Set
    Aside—Case in Judgment.*—If failure of the grantee in a deed
    (the consideration for which in part was the agreement of the
    grantee to support the grantor) to perform his covenants be
    ground for setting aside the deed (as to which no opinion is
    expressed) the evidence and circumstances disclosed by the
    record in the case in judgment wholly fail to sustain the con-
    tention that the grantee has not complied with his contract.

Appeal from a decree of the Circuit Court of Wythe
county.  Decree for the complainants.  Defendants ap-
peal.

*Reversed.*

The opinion states the case.

*E. Lee Trinkle* and *W. B. Kegley,* for the appellant.

*W. S. Poage,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The controlling question in this case involves the mental capacity of Sallie Worrell and Pollie Harrell to make and execute a certain deed dated the 27th day of March, 1907, by which they conveyed their real estate to their nephew, D. H. Wampler, and of Sallie Worrell to make the will left by her when she died in July, 1907.

It appears that at the time of the transactions now called in question these two old people were living together, as they had done for many years prior thereto, upon a small tract of land containing in the aggregate forty-nine acres, situated about two miles from Rural Retreat, in the county of Wythe. Of this tract Pollie Harrell was the owner of twenty acres and Sallie Worrell the owner of the remaining twenty-nine acres. They were sisters and had both been married, but the husband of each was dead. Pollie Harrell had grandchildren, but Sallie Worrell was childless and without descendants. They were both over seventy-five years of age and feeble. They were of plain and simple habits of life, uneducated, and had spent practically all of their lives in the community where they resided at the time of the execution of the papers in controversy, very much alone, seeing and mixing with but few people. They made their living while they were able to perform their usual work, by weaving, raising fowls, selling eggs and butter, and renting out their little farm to croppers. They did their own marketing, made their own trades with their croppers and others, looked after the division of the crops,

and generally performed all of the labors about their home. A brother, George Wampler, owned a small tract of land adjoining their land, and had assisted them in looking after their affairs, doing work for them which they could not personally perform. These modest surroundings and this uneventful simple life constituted the daily routine of these two feeble old people, whose mental capacity is the subject of this inquiry.

It appears that prior to March 27, 1907, when the deed under consideration was executed, these two old people, with a view of aiding two of their nephews, sons of their brother George Wampler, in the purchase of a threshing machine, became their endorsers for $1,875, and gave a deed of trust on their little farm to secure that sum. This enterprise of the nephews proved a failure, and resulted in leaving an unpaid balance of about $1,000, secured by deed of trust on the farm, without any other source of payment but these women. This heavy encumbrance coming in their old age and enfeebled condition was naturally a great source of anxiety and trouble to them, leaving them in constant fear of having their home sold to satisfy the debt. On March 24, 1907, three days before the deed in question was executed, George Wampler, the brother to whom they had looked for assistance, died, thus increasing their anxiety and helpless condition. At this time their nephew, D. H. Wampler, the appellant, who lived about sixty-eight miles distant, in the State of Tennessee, and who had come to attend his uncle's funeral, was at the home of his old aunts paying them a visit. This nephew had spent a considerable part of his early life with these aunts, and had visited them after settling elsewhere. It was while on this visit that the deed of March 27, 1907, was made and executed by the aunts conveying to D. H. Wampler their land upon the terms and conditions therein set forth. Those terms were, that the nephew should, in consideration of the forty-nine

acres of land, pay all liens and debts to which the land was subject, and should maintain and support the two grantors and their sister, Ann Wampler Miller, during their life- time. The deed provides that, as a further consideration for the land conveyed, the grantor should pay to the grand-children of Pollie Harrell whatever was left of her part of the property after considering her support and deducting her part of the liens and debts binding the whole land. Provision is made for the appointment of a disinterested committee of three persons to value the land of Pollie Har-rell, as a basis for the settlement with her grandchildren. This committee was selected by the grantors, and at their instance made a prompt report, estimating the value of Pollie Harrell's twenty acres at $40.00 per acre. This report was attached to the deed as a part thereof before it was recorded, the three members of the committee who made and signed it acknowledging the same before the notary who was present at the execution of the deed. The members of this commission are shown to be men of fine judgment and the highest standing.

After this deed was made and recorded, and before July 12, 1907, Sallie Worrell made and executed a will by which she gave to her nephew, D. H. Wampler, the appellant, her personal property, providing that the legatee should pay her sister, Ann Wampler, $25.00, and her nephew, G. W. Wampler, $10.00, within six months of the time of her death. Soon after this will was executed Sallie Worrell died, and it was duly proven and admitted to record on July 12, 1907. The death of Sallie Worrell within a few months after the execution of the deed in controversy seems to have made the impression upon Pollie Harrell and Ann Wampler Miller that the appellant had gained some advantage under the deed. This idea, the record very clearly indicates, was instigated by the sister, Ann Wampler Miller, who was secured a support for life under the deed. She is shown to

be a very turbulent spirit, and her dissatisfaction and agitation continued until the bill in this case was filed by herself and Pollie Harrell, one of the grantors in the deed, seeking to annul the same and also to have declared null and void the will left by Sallie Worrell, upon the ground that she and her deceased sister were both of unsound mind and therefore incapable of making either a deed or a will.

There is no direct evidence adduced to sustain the charge that undue influence was exerted over these aunts by their nephew, the appellant, nor are there any circumstances tending to support the charge. On the contrary, the execution of both the deed and the will appears to have been wholly voluntary acts on their part, uninfluenced by suggestion from any quarter. The record furnishes a sufficient reason moving the grantors to make the deed of March 27, 1907 They were old and feeble, and were in urgent need of some one competent to manage their affairs and look after their comfort. Their brother, George Wampler, upon whom they had depended for help, had just died, and they had no near relative in the community in whom they could place confidence. In this dilemma their nephew, the appellant, who had lived with and been nurtured by them, and for whom they must have felt some affection, appeared in their home, and they at once turned to him for the help they so much needed at that time, and determined through him to make certain provision for their support during their remaining years.

The appellees seek to inject into this case, as evidence, the record of a suit brought some years before by Sallie Worrell, which they claim involved her mental capacity. The transactions involved in that suit have no bearing upon the case at bar, and cannot be looked to for any purpose. The appellant was not a party to that suit, and is in no way bound by the proceedings therein or its results. The present cause must be decided upon its own merits and not

upon the results of a long past litigation, the record of which the appellant had never seen.

In this case, as in most cases of its kind, an array of witnesses has been introduced for and against the competency of these old people to make and execute the instruments involved in this controversy. The preponderance of this evidence is, we think, in favor of their competency. Such evidence is, however, at best, very unsatisfactory and furnishes a very inadequate basis for a reliable conclusion. It consists largely of opinions of person having little acquaintance with those whose mental capacity is questioned, the conclusions reached having no substantial basis for support in either fact or reason. Hence it is that the testimony of those who were present at the *factum* is chiefly regarded, and held to be more reliable than the opinion of other witnesses based on facts, which may be proved and yet not be the result of unsoundness of mind. *Beverly* v. *Walden,* 20 Gratt. 147; *Howard* v. *Howard, ante,* p. 566, decided at the present term of this court.

In this case there were present at the execution of the deed of March 27, 1907, besides the grantor and grantee, three witnesses: Dr. W. W. Buck, who had been, up to his retirement from practice, for years the family physician of these people, and had known them well practically all of his life; James F. Huddle, a farmer living within a mile of the grantors, who had known them well for more than forty years; and E. M. Davis, cashier of a bank at Rural Retreat, and the notary who took the acknowledgment to the deed, who had known the grantors for many years.

The witnesses to the will of Sallie Worrell were Dr. Buck and Dr. E. W. Peary, who succeeded Dr. Buck as the family physician of these old people after the retirement of the former from practice. The evidence is full as to the intelligence, integrity and high standing of these witnesses in the community. They were entirely disinterested and express the emphatic and unqualified opinion that Pollie Harrell and

Sallie Worrell were of sound mind and entirely capable of making both the deed and the will now in controversy. Dr. Buck prepared both the deed and the will, and says that the entire terms of each were fully discussed by Pollie Harrell and Sallie Worrell and recorded in accordance with their directions, free from the suggestion or influence of anyone. It further appears from this evidence that before these papers were signed they were again carefully read over and fully explained to these parties, who stated in each case that it was all right and what they wanted to do. These witnesses do not claim that these old people were possessed of any unusual intelligence, but their evidence is full and clear that they were capable of understanding, and that they did fully comprehend, the nature of both these transactions, which were their free and voluntary acts, uninfluenced by any suggestion or persuasion from outside sources.

No particular degree of mental acumen is to be prescribed as the measure of one's capacity to execute deeds or wills. The test is whether the party had at the time of the execution of the instrument sufficient mental capacity to understand the nature of the transaction he was entering into, and to assent to its provisions. *Greer* v. *Greers*, 9 Gratt. 330; *Beverly* v. *Walden, supra.*

Measured by this test, the mental capacity of Pollie Harrell and Sallie Worrell is shown to have been fully equal to making and executing the deed and will involved in this controversy.

It is contended on behalf of the appellees that the consideration for the deed in question is so grossly inadequate as to show fraud in its procurement. This contention is wholly without merit. The deed shows on its face ample consideration. It shows that Pollie Harrell, who is now uniting in this attack upon her own mental capacity and that of her deceased sister, received every dollar her prop-

erty was worth at the time, the value being ascertained in the manner suggested and insisted upon by her, which was a usual and proper method of arriving at such value. The witnesses introduced by both parties are practically united in the opinion that the consideration for the deed was ample, most of them saying that appellant had assumed more than they would have been willing to do for the same consideration.

It is further contended on behalf of appellees that appellant has failed to perform the obligations assumed by him under the deed. This is a mere recital in the bill and does not appear to be a ground relied on for setting aside the deed. So far from basing their complaint upon the failure of appellant to comply with his covenants, they show that they did not wish him to comply or to be permitted to comply, since they pray for an injunction to restrain appellant from entering upon or taking possession of the land, thus showing their purpose to put it beyond his power to comply. This contention is, however, not sustained by the record. On the contrary, it satisfactorily appears that appellant has done all that he could reasonably be expected to do in compliance with his contract. He arranged for the cultivation of their land, for having firewood hauled and cut, and for furnishing flour and other necessaries. He furnished them with a cow to provide them with milk and butter, furnished fertilizer for the farm, had the necessary fencing on the place done, and arranged with the tenant to turn over to them all that was raised on the place for their support and maintenance. He arranged with physicians to give them such medical attention as they should need, and for his notification should his presence be needed. He sent his daughter to live with them and to look after their personal comfort, who remained with them until the pestiferous Ann Miller made conditions so disagreeable that she could no longer stay. In the last illness of Sallie Worrell appellant

came with his wife, spending some weeks in the home, and gave to his aunt the personal attention that she needed, and when she died gave her decent burial and paid her funeral expenses.  Since the death of Sallie Worrell, through the misguided feeling and violence of Ann Miller, appellant has been forced to keep away from the home, and has been unable to render them any personal service, either by himself or by members of his family.  He has, however, continued, through the tenant employed by him, to furnish them their support.  He has sent them money at different times, through other parties, which sums they, under advice of counsel, refused to accept.  It further appears that appellant has received nothing from the use of the place; on the contrary, it has been an expense to him ever since the deed was made.  It is true that appellant has not paid off the mortgage on the place, and he was wise not to do so pending this litigation.  He was so advised by his attorney, and he made an arrangement with the creditor not to press the collection until after this suit was determined.  This arrangement has been fully carried out, and appellees have suffered no inconvenience therefrom.

If failure to perform covenants were ground for setting aside the deed, as to which we express no opinion, the evidence and circumstances disclosed by this record wholly fail to sustain the contention that appellant has not complied with his contract.

For these reasons, the court is of opinion that the decree of the circuit court, declaring null and void the deed of March 27, 1907, and the will of Sallie Worrell, probated July 12, 1907, is erroneous and must, therefore, be reversed; and this court will enter such decree as the circuit court ought to have entered, dismissing the bill filed by the appellees, with costs, in favor of the appellant.

*Reversed.*