# Richmond.

## SOPHIE BUKVA v. F. D. MATTHEWS AND DENNIS D. TUTTLE.

### December 22, 1927.

1. EXCEPTIONS, BILL OF—*Notice of Time and Place where to be Tendered— Section 6252 of the Code of 1924, Acts of 1924, Page 62, Amending Code of 1919, Section 6252—How Notice May be Shown—Case at Bar.*—Section 6252 of the Code of 1924, Acts of 1924, page 62, amending Code of 1919, section 6252, provides that before the court or judge in vacation shall sign any bill of exceptions as tendered, it shall appear in writing that the opposite party or his attorney has had reasonable notice of the time and place at which said bill of exceptions was to be tendered to the court or judge. In the instant case it did not appear in the bills of exception, nor elsewhere in the record, that the notice prescribed by the statute was given.

   *Held:* That this omission might be supplied *aliunde,* and the facts brought to the attention of the court on the hearing of a motion to dismiss the writ of error for failure to comply with section 6252 of the Code of 1924, were sufficient to show that the notice had been given and received.

2. EXCEPTIONS, BILL OF—*Notice of Time and Place where to be Tendered— Section 6252 of the Code of 1924, Acts of 1924, Page 62, Amending Code of 1919, Section 6252—Sufficiency of Notice—Case at Bar.*—In the instant case defendants in error moved to dismiss the writ of error upon the ground that the bills of exceptions were null and void, because of failure to comply with section 6252 of the Code of 1924, Acts of 1924, page 62, amending Code of 1919, section 6252. From the facts shown on the hearing of the motion to dismiss it was obvious that the attorneys for both litigants agreed upon the form and substance of the bills of exceptions, that the notice in writing was. given, accepted and acted upon by both attorneys as *reasonable notice,* to the end that the bills might be tendered to the judge by mailing them to him for his consideration.

   *Held:* That the defendants in error waived any more formal compliance with the statute, and having acquiesced in all that was done could not raise any question on appeal as to the reasonableness of the notice.

3. EXCEPTIONS, BILL OF—*Notice of Time and Place where to be Tendered— Section 6252 of the Code of 1924, Acts of 1924, Page 62, Amending Code of 1919, Section 6252—How Notice May be Shown.*—The manner of showing notice of the time and place at which a bill of exceptions is to be tendered to the court or judge under section 6252 of the Code of 1924, Acts of 1924, page 62, amending Code of 1919, section 6252, is a matter of form, and it may be shown by affidavits that the notice was in fact given or was waived.

4. EXCEPTIONS, BILL OF—*Chambers and Vacation—Judge Signing Bill Elsewhere in Virginia than within his Territorial Jurisdiction.*—The authority of a judge in vacation to sign bills of exceptions is not confined in Virginia to the city or county in which the case was tried, or in which he has jurisdiction to hold court. This view has prevailed for a long period of years in Virginia and may be implied from the statute itself (section 6252 of the Code of 1924, Acts of 1924, page 62, amending Code of 1919, section 6252). Under our present Constitution the judges of the appellate court and the trial courts are constitutional State officers, and there are many acts attaching to the person and office of judge, which may be performed by him outside of court or in vacation, and are to that extent judicial acts.

5. POWER OF ATTORNEY—*Construction of Power Given by Wife to Husband to Execute Contracts and Deeds Concerning Wife's Real Estate—Exchange of Property—Contracts for Commissions of Real Estate Agents—Case at Bar.*—In the instant case, an action by real estate agents for commissions, defendant had given her husband a power of attorney to execute, acknowledge and record any and all deeds or other writings which it might be necessary or desirable for her to execute, including contracts of sale or deeds conveying the title to real estate owned by her or in which she has any interest, present or contingent, in the city of Norfolk or elsewhere; and to do, execute and perform all and every other act or acts, thing or things in law needful and necessary to be done in and about the premises as fully, largely and amply to all intents and purposes whatsoever as she might or could do if she were personally present and acting herself.

*Held:* That this power was broad enough to authorize the husband to exchange property of the wife which had been acquired subsequent to the execution of the power and to permit the husband to employ the plaintiffs, real estate agents, and agree to pay them commissions.

6. POWERS—*Classification of Powers—Special and General.*—Powers of attorney are frequently classified as special and general, a more liberal construction in favor of the agent and third persons being allowed in the case of general than in the case of special power.

7. POWERS—*Classification of Powers—Special and General.*—The distinction between special and general powers of attorney is often difficult

of application, and the real task is to determine from the language of the instrument and the circumstances what third persons might fairly understand as its purport.

8. POWERS—*Power of Attorney by Wife to Husband—Construction—Whether Power was for Temporary Purpose—Case at Bar.*—In the instant case the defendant, a wife, insisted that she had executed the power of attorney in question to enable her husband to sign her name to documents during her temporary absence for a few months. There was nothing on the face of the instrument to indicate such limited purpose; and the fact that it was recorded would lead one to conclude otherwise; and the power remained unrevoked on the record till after this suit was brought.

*Held:* That the power could not be given the construction contended for by the wife.

9. POWERS—*Power for Sale of Land Recorded Regarded as Continuing.*—A power of attorney for the sale of lands recorded, and in no manner revoked, may be rightfully regarded by purchasers as continuing.

10. POWERS—*Power to Sell—Incidental Transactions—Case at Bar.*—In the instant case a power of attorney gave the agent power to execute, acknowledge and record *all deeds,* with the addition "or other writings which it may be necessary or desirable for me to execute, including contracts of sale or deeds conveying the title to real estate owned by me." This may naturally and fairly be taken to indicate that the agent could execute any contract which, by reason of its necessity or desirability in connection with the conveyance of real estate, became incidental to such a transaction.

11. POWERS—*Power of Sale—After-Acquired Property—Case at Bar.*—In the instant case defendant gave her husband a power of attorney to execute, acknowledge, etc., deeds of real estate owned by her "or in which I have any interest, present or contingent, in the city of Norfolk or elsewhere." Defendant contended that she intended to restrict the exercise of the powers conferred to such real estate as she owned at the time the power was conferred.

*Held:* That if such was the intention it was not sufficiently expressed, considering the general wide scope of the instrument.

12. REAL ESTATE BROKERS—*Action for Commissions—Instructions—Husband the Agent of Wife—Exchange of Property—Case at Bar.*—The instant case was an action by real estate brokers for commissions. The court instructed the jury that if they believed that defendant's husband was her agent, with authority to execute a contract with the real estate brokers and that he executed the contract sued upon, and in pursuance of the terms of the contract the real estate brokers produced a purchaser ready, willing and able to carry out the contract and the defendant breached the contract, their verdict should be for plaintiff.

*Held:* No error, in view of other instructions fully covering the theory of the defense, and leaving to the jury the determination of issues resting upon conflicting evidence.

13. REAL ESTATE BROKERS—*Action for Commissions—Exchange of Property—Commissions on Both Properties—Case at Bar.*—The instant case was an action by real estate brokers for commissions. The husband of the defendant acting as her agent negotiated through the brokers an exchange of properties in which the brokers were acting for both parties and each owner agreed to pay commissions on his own property involved in the deal.

*Held:* That plaintiffs could only recover in the instant suit the commissions on defendant's own property when she breached the contract, not the commissions on the property of the other party to the exchange. The contract for commissions of the agents with the other party to the exchange is separate from the contract with the defendant.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, in a proceeding by motion for a judgment for money. Judgment for plaintiffs. Defendant assigns error.

*Reversed and final judgment.*

The opinion states the case.

*Mann & Tyler,* for the plaintiff in error.

*J. Carlton Hudson* and *James G. Martin,* for the defendants in error.

CRUMP, P., delivered the opinion of the court.

The plaintiff in error complains of a judgment rendered against her in July, 1926, upon a verdict for $899.00 returned by a jury in favor of the defendants in error, on the trial of a motion for judgment brought by the defendants in error as plaintiffs in the trial court.

A preliminary question is presented by a motion of the defendants in error to dismiss this writ of error upon the ground that the bills of exceptions are null and void, because of failure to comply with section 6252 of the Code as amended by the legislature in 1924 (Acts 1924, c. 68). The portion of the statute, pertinent here, reads as amended: "But before the court or judge in vacation shall sign any bill of exceptions as tendered, it shall appear in writing that the opposite party or his attorney has had reasonable notice of the time and place at which said bill of exception is to be tendered to the court or judge."

The bills of exceptions as copied in the record are authenticated by the signature of the trial judge following this certification at the conclusion of each one "Signed and sealed September 10, 1926."

[1] It does not appear in the bills, nor elsewhere in the record, that the notice prescribed by the statute was given. As this omission may be supplied *aliunde*, the facts brought to the attention of the court on the hearing of the motion to dismiss were: A written notice was given and accepted thus:

"September 2nd, 1926.

"MR. J. CARLTON HUDSON,

"Attorney for F. D. Matthews and Dennis D. Tuttle.

"Please take notice that on Saturday, the 4th day of September, 1926, I shall tender to Hon. Richard McIlwaine, Jr., judge of the Court of Law and Chancery of the city of Norfolk, at Sweet Springs, Monroe county, *West Virginia*, the seven bills of exceptions which have been exhibited to you in the matter of

*F. D. Matthews and Dennis D. Tuttle* vs. *Sophie Bukva and American Investment Corporation*, in

which case the final order was entered on the 16th day of July, 1926.

"JAMES MANN,

"Attorney for Sophia Bukva.

"I acknowledge legal service of the above notice.

"J. CARLTON HUDSON,

"Attorney for F. D. Matthews and Dennis D. Tuttle."

The bills of exceptions had been exhibited to and read by Mr. Hudson, the attorney for the opposite party, before he acknowledged service of the notice. Mr. Mann then enclosed the bills, together with the notice and acceptance, in a letter addressed to the judge at Sweet Springs, West Virginia, stating that he did so because it seemed probable the judge would not return to Norfolk before the prescribed time for signing the bills expired, and stating also that Mr. Hudson had seen them. He suggested in the letter that as there might be some question touching the authority of the judge to append his signature outside of Virginia, he would be glad if the judge would cross the line and sign the bills in this State. In acknowledging to Mr. Mann, under date of September 4th, the receipt of the letter and documents, the judge requested him to supply an omission in the testimony adding "and I shall be obliged if you will confer with Hudson, sending me a statement that I may interline in his (Matthews') testimony." Mr. Mann being absent from the city when the letter reached Norfolk, it was sent from Mr. Mann's office to Mr. Hudson, who prepared a written statement to supplement the testimony, and on September 7th mailed it to the judge at the Sweet Springs with a letter informing him that Mr. Mann was absent, so he had himself prepared the statement and sent a copy to Mr. Mann with the request that if

it was not agreeable to him he should wire the judge, and adding "I regret that we overlooked this important matter and trust the statement contains the information you desire to appear in the record." Upon the receipt of this letter the judge made the correction in the testimony, and he certifies that "on the 10th day of September, 1926, I crossed the State line into Virginia, and signed at Sweet Chalybeate Springs, Alleghany county, Virginia, the seven bills of exceptions that are set forth in the said printed record, and forthwith mailed the same at Sweet Chalybeate Springs, Virginia, to the clerk of the Law and Chancery Court of the city of Norfolk." The sixty days from the date of the judgment, within which bills of exception are required to be signed, had not expired on September 10th.

[2, 3] It is perfectly obvious that the attorneys for both litigants agreed upon the form and substance of the bills of exceptions; that the notice in writing was given, accepted and acted upon by both attorneys as *reasonable notice*, to the end that the bills might be tendered to the judge by mailing them to him for his consideration. When the proceeding is *in invitum*, and notice is served upon the opposite party or his attorney, the reasonableness of the notice in respect to time or place may be denied and contested; but when the notice is accepted and acted upon without exception or complaint, any objections that might have been made are waived. It is clear that the defendants in error waived any more formal compliance with the statute, and having acquiesced in all that was done cannot now raise any question in this court as to the reasonableness of the notice. In the recent case of *Scholz* v. *Standard, etc., Co.*, 145 Va. 700, 134 S. E. 728, it was held that the manner of showing that the notice

was given is a matter of form, and it may be shown by affidavits that the notice was in fact given or was waived.

[4] It is further contended, in support of the motion to dismiss, that the trial judge had no authority to sign the bills elsewhere in Virginia than within the territorial jurisdictional limits of the court in which the case was tried or of the circuit or city of the trial judge, as the appending of his signature was a judicial act. We cannot accede to this. Whatever may be the rulings under the judiciary systems in other States, the contrary view has prevailed for a long period of years with both the bench and the bar in Virginia. Under our present Constitution the judges of the appellate court and the trial courts are constitutional State officers, and there are many acts attaching to the person and office of judge which may be performed by him outside of court or in vacation, and are to that extent judicial acts. The authority to sign bills of exceptions is not limited by the statute except in respect to the time, and in respect to the notice under the recent amendment. There is quite a long line of comparatively recent Virginia cases from *Colby* v. *Reams*, 109 Va. 308, 63 S. E. 1009, to *Scholz* v. *Standard, etc., Co., supra,* in which the validity of bills of exceptions was assailed, and in none of them has it been suggested that the authority of the judge in vacation to sign bills of exceptions should be confined under our practice to the city or county in which the case was tried, or in which he has jurisdiction to hold court. Such a rule, if enunciated, would be intolerable and would in many cases necessarily defeat the ends of justice. The statute itself, in allowing or directing the *designation* of the *place* at which the bills may be tendered, implies that they may be signed at some

place beyond the territorial limits of the ordinary jurisdiction of the judge to hold his court. Section 5898 of the Code (amended Acts 1926, p. 109) allows any trial judge in Virginia to preside over the court of any other judge in the State upon the mere request or procurement of the latter, without any designation by the Governor.

The motion to dismiss the writ of error is overruled.

The notice of motion against the defendant is very general, reciting that the defendant owed the plaintiffs $899.00 by reason of the breach of a contract filed as a part of the notice. This contract is in the following language:

"NORFOLK, VA., February 4th, 1926.

"F. D. MATTHEWS AND DENNIS D. TUTTLE, Agents.

"I hereby offer and agree to purchase for the sum of eleven thousand dollars ($11,000.00) all that certain cottage and lot fronting fifty feet on Chesapeake Bay, which said property is west of and adjoining the United States government reservations and said lot runs through to and fronts twenty-five feet on Ocean View Ave., or Boulevard. In payment for the above property I am to give my property 624 west 35th street, the owner of the above described Willoughby Beach property is to assume a loan now standing on the property 624 west 35th street for the sum of $4,200.00 for three years. I am also to give three (3) acres of land at Lansdale, Princess Anne county, described as follows:

"Sites 87, 93, 94 as per plat attached.

"The above mentioned three acres of land at Lansdale are free of all encumbrances. I am also to pay to the owner of the above mentioned cottage at Willoughby Beach the sum of twenty-nine hundred dollars ($2,900.00) in cash.

"The taxes, interest, rents are to be apportioned as of date of transfer of the above mentioned properties.

"Full and final settlement to be made on or before the 10th day of March, 1926.

"SOPHIE BUKVA

"By PAUL BUKVA, Attorney.

"AMERICAN INVESTMENT CORP.,

"By PAUL BUKVA, Secretary.

"It is further understood that I am to pay the commission on my property to F. D. Matthews and D. D. Tuttle in the event the exchange of the above properties. In other words it is understood that both parties are to pay the commission, on their respective properties.

"PAUL BUKVA.

"I accept your offer.

"N. B. JOYNES."

The Investment Corporation had no interest in the property and the case was in effect dismissed as to that defendant.

It is disclosed by the evidence that the plaintiffs were real estate agents in Norfolk city. One of them, Matthews, went to the home of Paul Bukva, the husband of the defendant, on February 4, 1926. He had with him the above contract typewritten, unsigned and without the appended agreement concerning commissions. He and Bukva discussed at some length the proposed sale or exchange, Bukva having before that time been with Mr. Tuttle to look over the Joynes property. The contract or proposal was then signed by Bukva as attorney, and he also signed the agreement as to commissions. The proposal was signed and delivered by Bukva upon condition that it should be accepted by Joynes affixing his signature before the

following Saturday at 12 o'clock. Joynes not having so signed, Matthews saw Bukva again at his house on Saturday and it was agreed that the proposal was to be kept open for Joynes' signature until the following Monday morning, February 8th (1926), at 12 M. Joynes did sign on that day before that hour, and a written contract thus resulted.

The following power of attorney was put in evidence by the plaintiffs as authority for Bukva to sign as attorney in fact for his wife:

"Know all men by these presents that I, Sophie Bukva, wife of Paul Bukva, of the city of Norfolk, Virginia, have made, constituted and appointed, and by these presents do make, constitute and appoint the said Paul Bukva my true and lawful attorney in fact for me and in my name, place and stead, to execute, acknowledge and cause to be recorded any and all deeds or other writings which it may be necessary or desirable for me to execute, including contracts of sale or deeds conveying the title to real estate owned by me or in which I have any interest, present or contingent, in the city of Norfolk or elsewhere; and to do, execute and perform all and every other act or acts, thing or things in law needful and necessary to be done in and about the premises as fully, largely and amply to all intents and purposes whatsoever as I might or could do if I were personally present and acting myself. And I hereby ratify and confirm any and all acts done by my said attorney in fact by virtue hereof.

"Given under my hand and seal this 16th day of April, 1920.

"SOPHIE BUKVA (Seal)"

The instrument was properly acknowledged, and was recorded on the 21st of May, 1920.

It was testified by Matthews, for the plaintiffs, that when Bukva signed the contract at his house, Mrs. Bukva, the defendant, was present and her husband explained to her the exchange of the properties as mentioned in the contract and it was with her full consent and knowledge that Bukva, acting for her, signed the contract.

Paul Bukva testified for the defense that the defendant did not authorize him to sign the contract, and she did not know that he had signed it until later; that he signed upon the condition that it was not to be effective until Mrs. Bukva, who had never seen the Joynes property, should see the same and approve the trade; and further that when Matthews saw him on Saturday and asked him to extend the time for obtaining Joynes' signature until Monday, he agreed to the extension, informing Mr. Matthews, however, that Mrs. Bukva had not seen the Joynes property, and making it a condition that the deal was not to go through unless she should see the property and approve the deal; that while he was in favor of the trade and thought it a good one, his wife refused to see the Joynes property and said she would not trade for any Willoughby Beach property; that he had made the extension without her knowledge and she had never acquiesced either in his making the contract or in his extension of time for its acceptance.

Mrs. Bukva testified that while she was in the house on the first visit of Mr. Matthews, she did not know what he and her husband were talking about, and learned about the proposed trade only later; that she did not authorize his making the trade, nor signing the contract, and had never acquiesced in it; that she had refused to see the Ocean View property.

Matthews on the stand denied that the contract had

been signed or the extension granted upon condition that Mrs. Bukva should see the property and consent to the trade, as Bukva had testified.

At the conclusion of the evidence the court gave the following instructions:

"1. The court instructs the jury that if they believe from the evidence that the offer made on February 4, 1926, and any extension thereof, was conditioned upon its being approved by Mrs. Bukva after she saw the Ocean View property, and that she did not approve the same, they must find for the defendants.

"2. The court instructs the jury that the burden of proof is on the plaintiffs to establish the right of Paul Bukva to make the contract in question on behalf of the defendants, and unless they believe from the evidence that such right has been established by a preponderance of the evidence they must find for the defendants.

"3. The court further instructs the jury that unless they believe from the evidence that Paul Bukva was authorized by the defendants to extend the time within which the offer might be accepted by Mr. Joynes, from Saturday to Monday, and that he did actually extend such time without the condition that such extension should be approved by Mrs. Bukva, and that the offer was actually accepted within the time limit, they must find for the defendants.

"4. The court instructs the jury that the defendants had the right to withdraw the offer of February 4, 1926, at any time before it was actually accepted, and that if they believe from the evidence that Paul Bukva notified the plaintiffs or either of them that the offer was withdrawn, or that the deal was off, before the offer was actually accepted by Mr. Joynes, they must find for the defendants.

"5. The court instructs the jury that if they believe from the evidence that Paul Bukva was the agent of Mrs. Bukva with authority to execute the contract in evidence and with authority to extend the time of its taking effect 'til Monday, the 8th day of February, at 12 o'clock, and that in pursuance of such authority he executed such contract and extended unconditionally the time as aforesaid, and that in pursuance of the terms of such extended contract N. B. Joynes was produced as the purchaser ready, willing and able to carry out said contract and that the defendant, Sophie Bukva, breached said contract, your verdict should be for the plaintiff."

It is recited in one of the bills of exception that during the argument before the jury, counsel for the defendant argued that "under the power of attorney of April 16, 1920, the authority was not broad enough to authorize the contract sued on, or to embrace the exchange of the property in question which had been acquired subsequent to the execution of said power of attorney, or to permit the attorney in fact to employ the plaintiffs as agents and agree to pay them commissions;" that the counsel for plaintiffs objected to this line of argument, and the court then instructed the jury thus:

[5] "You are instructed that the power of attorney of April 16, 1920, constituted a sufficient authority in Paul Bukva to enable him to make the contract now being sued on."

The court therefore construed the power of attorney as authorizing Bukva to bind his wife, by signing her name to the contract by him as her attorney, to all of its terms, including the obligation to pay the agents commissions on the property.

[6–8]   The authority conferred upon the husband

is contained in a formal power of attorney, quite com-
prehensive in its terms, not restricted to any particular
transaction or property or parcel of real estate, executed
under seal, acknowledged, and recorded in order to
impart general knowledge of the authority of the donee
of the power.    Powers of attorney are frequently clas-
sified as special and general, a more liberal construction
in favor of the agent and third persons being allowed
in the case of general than in the case of special power.
*Davis* v. *Gordon,* 87 Va. 559, 13 S. E. 35.    The distinc-
tion, however, is often difficult of application, and the
real task is to determine from the language of the instru-
ment and the circumstances what third persons might
fairly understand as its purport.    It is insisted by the
defendant that she executed this power to enable her
husband to sign her name to documents during her
temporary absence for five or six months.    There is
nothing on the face of the instrument to indicate such
limited purpose; and the fact that it was recorded
would lead one to conclude otherwise; it remained
unrevoked on the record till after this suit was brought.

[9] "A power of attorney for the sale of lands recorded
and in no manner revoked may be rightfully regarded
by purchasers as continuing."    2 Corpus Juris, 611.

[10, 11] The instrument here gives the agent power to
execute, acknowledge and record *all deeds,* with the
addition "or other writings which it may be necessary
or desirable for me to execute, including contracts of
sale or deeds conveying the title to real estate owned
by me."    This may naturally and fairly be taken to
indicate that the agent could execute any contract
which, by reason of its necessity or desirability in con-
nection with the conveyance of real estate, became
incidental to such a transaction.    All such acts and
anything else essential could be done, says the principal,

"as fully, largely and amply to all intents and purposes whatsoever as I might or could do if I were personally present and acting for myself." When the agent acted under the power, any essential of desirability became settled in and by the act performed, certainly as to all persons dealing with the agent. To hold that Mrs. Bukva intended to retain complete control over the acts of the agent, so that the effect of the power was merely to authorize the agent to sign her name when directed by her, would render the power of attorney nugatory and meaningless. It does not appear that Mrs. Bukva was unable to write. She seems to have signed her name to the power, and testified she had signed other papers. It is argued that by the phrase "real estate owned by me or in which I have any interest, present or contingent, in the city of Norfolk or elsewhere," the principal intended to restrict the exercise of powers conferred to such real estate as she *owned at the time the power was conferred.* If such was the intention it is certainly not sufficiently expressed, considering the general wide scope of the instrument.

The powers conferred are so broad that the parties seem purposely to have refrained from indicating any details.

In general a power to sell and execute deeds carries with it the power to perform all incidental acts. 2 C. J. page 614.

It is manifest the trial court held that such an instrument, as that in issue here, placed upon the public records, was a continuing power until revoked with equal formality, and conferred upon the agent authority to bind the principal in such a transaction as appears in the instant case. While it probably cannot be said that this power of attorney is technically a general power, yet the authority conferred by it is

unusually comprehensive as to the acts embraced in it. | The evidence in the record is stated in brief narrative form, and we cannot say that the learned trial judge who heard all the evidence in detail committed error in holding that under all the circumstances of the case, the agent under this instrument was sufficiently authorized to bind the principal by the execution of the contract in question. The court did not err, therefore, in giving the instruction complained of.

[12] The granting of instruction No. 5 is assigned as error. We see no objection to this instruction. The other four instructions fully covered the theory of the defense, and left to the jury the determination of issues resting upon conflicting evidence.

The refusal of the court to grant several instructions tendered by the defendant is also assigned as error. According to the views we have already expressed, only one of these need be considered and is as follows:

[13] "The court instructs the jury that if the plaintiffs are entitled to recover in this case, they can only recover the commissions on the property at Landsale and 35th street described, and not on the property owned by Mr. Joynes."

In refusing this instruction and in allowing a recovery against Mrs. Bukva of the commissions agreed to be paid by Joynes, as well as the commissions on her own property, we think the court erred. The commissions on the defendant's property amounted to $469.00, on Joynes' property to $430.00, aggregating $899.00 as found in the verdict. This is practically a case of exchange of properties in which the agents were acting for both parties, each owner agreeing to pay commissions on his own property involved in the deal. Nothing is shown either in the pleading or in the evidence, upon which to base the claim that the defendant, Mrs.

Bukva, should pay the commissions due by Joynes under his contract with the agent, except the mere fact that Mrs. Bukva refused to consummate the contract of purchase and sale with Joynes, although the latter was willing to do so.

The contract for commissions of the agents with Joynes is separate from their contract with the defendant. If she induced Joynes to break his contract, she might in a proper case make herself liable in damages to the agents to be measured by the amount of commissions they could legally have made Joynes pay. There is nothing here to show that the agents have lost their right to demand commissions from Joynes under his contract with them. So far as appears Joynes may have a valid defense to such a demand.

In *Palmer* v. *Showalter*, 126 Va. 306, 101 S. E. 136, the agent sued the landowner and a third party in an action of tort, on the ground that they had by fraudulent conduct deprived him of commissions.

In the instant case the verdict should have been against the defendant only for the commissions earned by the agents in handling her property.

One or two other matters were argued on appeal, but their decision could not affect the judgment of this court.

For the foregoing reasons, the judgment of the trial court will be reversed and in lieu thereof judgment will be rendered by this court against the plaintiff in error, in favor of the defendants in error for $469.00 with interest from April 28, 1926, until paid, and costs; with costs of the appeal in favor of the plaintiff in error as the party substantially prevailing.

*Reversed and final judgment.*