## CIRCUIT COURT OF AMHERST COUNTY

Irene Garland,
by her next friend,
Milton E. Cash

v.

Edwin F. Fitzgerald

Case No. (Chancery) 6634

Sallie Jones Moorehead,
by her next friend,
Dorothy Smith

v.

Edwin F. Fitzgerald

Case No. (Chancery) 6659

August 31, 1992

BY JUDGE J. MICHAEL GAMBLE

Both of these cases involve actions to set aside deeds executed in September and October, 1991, conveying the interests of Sallie Jones Moorehead and Irene Garland, respectively, in real estate which they had inherited from Julian Horace Jones.

The real estate which is the subject of this suit consists of a tract of land containing 36.810 acres located on State Route 778 in the Temperance Magisterial District of Amherst County, Virginia. Julian Horace Jones acquired title to this property in 1932 and died intestate without a spouse or issue surviving in 1991. Julian Horace Jones died intestate, and his closest survivors and heirs at law were two sisters, Sallie Jones Moorehead and Irene Cash Garland, and various nephews and nieces. As set forth on Plaintiff's Exhibit "A," Sallie Jones Moorehead and Irene Cash Garland each inherited a 25 percent interest in the subject real estate.

Edwin Fitzgerald, who owns a 200-acre farm in the vicinity of the Julian Horace Jones property, became interested in acquiring the Jones property for farming purposes. Through the efforts of his attorney and his own efforts, he was able to locate a list of heirs of Julian Horace Jones in the Amherst County Clerk's Office that had been filed by Dorothy Smith when she qualified as administratrix of his estate. The list of heirs filed in the Amherst County Circuit Court consisted of twenty names. The percentage of ownership by each listed heir was not disclosed. Further, it was later shown by testimony and exhibits at the trial of this case that this list did not contain all of the heirs of Julian Horace Jones. (*See* Plaintiff's Exhibit "A.")

After Edwin Fitzgerald had discovered some of the names of the heirs at law of Julian Horace Jones, he began to make arrangements to acquire the interests of these persons. By his testimony, he indicated that he did not really know what interest in the 36.8 acres each heir owned, and he generally decided that they all probably owned an equal share. He said that he decided for himself that the value of the property was around $25,000.00 and decided to offer each heir $1,000.00 for his or her interest. His attorney, J. Thompson Shrader, also indicated that he did not make any effort to ascertain what percentage of interest each of the heirs owned and simply followed the directions of his client, Mr. Fitzgerald, and drew deeds for each of the interests that Mr. Fitzgerald directed.

By deed dated September 27, 1991, Mr. Fitzgerald acquired the interest of Sallie Jones Moorehead for $1,000.00. This deed was executed by Virginia Ann Jones, her attorney-in-fact, through a power of attorney dated October, 1987.

Sallie Jones Moorehead is 104 years of age. Neither Mr. Fitzgerald or Mr. Shrader volunteered any information on what inter-

est Mrs. Moorehead owned in the property or what that interest may be worth. Mrs. Jones basically decided to accept the $1,000.00 offer of Mr. Fitzgerald and go to the office of Mr. Shrader to execute the deed. There was no evidence that Sallie Jones Moorehead was incompetent either at the time that the power of attorney was signed in 1987 or at the time that the deed was signed in 1991 by her attorney-in-fact, Virginia Jones. She had been a patient in a nursing home since 1987.

By deed dated October 11, 1991, Mr. Fitzgerald acquired the interest of Irene Garland for $1,800.00. Mrs. Irene Garland executed the deed to Mr. Fitzgerald in her own right. She is currently 89 years of age. Mr. Fitzgerald did not talk with Irene Garland until the date she executed the deed. He initially talked to Milton Cash, one of her grandsons, by telephone. At that time, Milton Cash held a power of attorney that had been executed by Irene Garland. According to Mr. Fitzgerald, Milton Cash agreed to come to Amherst and execute the deed selling the property for $1,800.00. However, Milton Cash did not appear. Thereafter, Mr. Fitzgerald called again and talked with Irene Garland's other grandson, Clarence Cash. After that discussion, Mr. Fitzgerald went to Philadelphia where Mrs. Garland lived and presented the deed to her at her home. At the time that he presented the deed to her, her grandson Clarence was present, her daughter was present (Clarence Cash's and Milton Cash's mother), the Notary Public was present, and one other person was present. According to Mr. Fitzgerald, he carried on a normal conversation with her, and she took a considerable period of time to read the deed and affidavit. None of the persons present voiced any objection to her executing the deed or indicated that she was incapacitated in any way to prevent her from executing the deed. Milton Cash, who held her power of attorney, was not present. Milton Cash later discovered that Irene Garland had executed the deed. In his testimony, he indicated that he did not believe Irene Garland was competent to execute a deed conveying her interest in the property.

Hospital records from the Medical College of Pennsylvania which were introduced into evidence indicated that Irene Garland had been hospitalized both in 1990 and in 1991. She was hospitalized from July 10, 1990, to July 24, 1990. At the time of her admission in 1990, she was diagnosed, among other problems, as having mild dementia. The primary treatment and diagnosis, however, was oriented towards renal failure and anemia.

Mrs. Garland was again admitted on September 9, 1991, and stayed in the hospital until September 20, 1991. At that time, she was initially admitted for abdominal pain, nausea, and other physical problems. In the progress note, confusion and forgetfulness were noted. A psychological test was given on September 14, 1991, indicating that she was "restrained, disoriented to time and place, and illogical." On September 19, 1991, it was indicated that she was still disoriented but less confused. The nurse discharge summary indicated that she was oriented to name only and needed 24-hour supervision. Also, her mini-mental state exam indicated that she answered a score of one in a total score of thirty, while just a year before during her hospitalization, she had answered a score of seventeen in a total score of thirty.

Two well-qualified real estate appraisers testified at trial. James R. Johnston, MAI, testified that the fair-market value of the real estate as of July, 1992, is $53,000.00. N. Roger Beidler, a very experienced real estate broker and appraiser, testified that the fair-market value is $48,200.00 to $51,200.00.

### Pleadings and Issues Presented

The prayers for relief in both of the cases are essentially the same. In the case of *Garland v. Fitzgerald*, the Bill of Complaint sets forth five grounds for relief: lack of mental capacity, fraud, mutual mistake of fact, unjust enrichment, and restitution based upon inadequacy of consideration.

In the case of *Moorehead v. Fitzgerald*, the same theories are alleged, with the additional theory that Virginia Jones's authority was only limited to the power to sell the property interest at fair market value pursuant to the power of attorney.

In both cases, the Plaintiffs either request that the deed be declared null and void or that the Plaintiffs be paid an amount equal to fair-market value of their interest in the property.

### Discussion of Authorities and Claims by the Parties

The Court will consider each of the grounds separately which have been alleged. Under each ground, the Court will discuss the law and fact applicable to each Plaintiff.

### Mental Capacity

No particular degree of mental capacity is necessary to execute

deeds or wills. In *Wampler v. Harrell*, 112 Va. 635, 641, 72 S.E.2d 135, 137 (1911), the Supreme Court of Virginia held:

> The test is whether the party had at the time of the execution of the instrument sufficient mental capacity to understand the nature of the transaction he was entering into and assent to its provisions. *Greers v. Greers*, 9 Gratt. 330.

The law presumes sanity until evidence of unsound mind has been introduced. *Wallen v. Wallen*, 107 Va. 131, 150, 5 S.E. 596 (1907). The presumption of insanity is rebuttable; however, the burden of proof to prove insanity or lack of capacity rests upon the person who is claiming insanity or lack of capacity. *Fines v. Kendrick*, 219 Va. 1084, 1086, 254 S.E.2d 108 (1979).

The key issue in the analysis of mental capacity is the mental status of the person at the time of the execution of the instrument. *Pace v. Richmond*, 231 Va. 216, 119, 343 S.E.2d 59; *Forehand v. Sawyer*, 147 Va. 105, 120–121, 136 S.E. 683 (1927); and *Price's Executor v. Barham*, 147 Va. 478, 481, 137 S.E. 511 (1927).

At the time that Sallie Moorehead executed the power of attorney, she was around 100 years old. At the time that the deed of Sallie Moorehead was signed by her attorney, she was over 100 years old. There was no evidence admitted to overcome the presumption of sanity of Sallie Moorehead either at the time that the power of attorney was executed or at the time that her attorney-in-fact executed the deed pursuant to the power of attorney. Therefore, the presumption of her sanity must govern notwithstanding her advanced years. Even if the evidence were equally balanced between capacity and incapacity, the presumption of sanity prevails. *Rowe v. Rowe*, 144 Va. 816, 822, 130 S.E. 771 (1925).

With respect to Irene Garland, the evidence demonstrated that she had been hospitalized approximately twenty days before she signed the deed on October 11, 1991. The hospital records in both 1990 and in 1991 indicated that she suffered from dementia. The 1990 records diagnosed mild dementia, and the 1991 records diagnosed dementia. Her grandson, Milton Cash, believed that she was not competent to execute a deed. However, Edwin Fitzgerald related that she seemed competent at the time she executed the deed, that other family members were present, that she responded appropriately to him in conversation, and that she reviewed the deed before she signed it.

The question of whether or not Irene Garland was competent at the time she executed the deed is more difficult than in the case of Sallie Moorehead. The Supreme Court of Virginia has held that a person, in the case of will, is competent even though the person has previously been judged to be insane if, at the time of the execution, the person is free from any affliction. *State Hospital v. Wininger*, 196 Va. 300, 312, 83 S.E.2d 446 (1954). Further, as noted by the Supreme Court of Virginia in *Pace v. Richmond*, 231 Va. 216, 219 (1986):

> Neither sickness nor impaired intellect is sufficient, standing alone, to render a will invalid. If, at the time of its execution, the testatrix was capable of recollecting her property, the natural objects of her bounty and their claims upon her, knew the business about which she was engaged and how she wished to dispose of her property, that is sufficient.

Certainly, the competency to execute a will is similar to the competency to execute a deed. Accordingly, even though Irene Garland had an impaired intellect around the time that she executed the deed, there is no evidence that at the time she executed the deed, she was incompetent. In fact, many family members were present. None were called to Court to testify that she was incapacitated at the time of that deed execution in October of 1991. Thus, the presumption of sanity must prevail.

### Duress and Undue Influence

The Supreme Court of Virginia has defined undue influence as follows:

> Undue influence is a substitution of the dominant will for that of the ostensible actor. *Croft v. Snidow*, 183 Va. 649, 657, 33 S.E.2d 208 (1945).

Undue influence is a species of fraud, and he who alleges it must prove it by clear and satisfactory evidence. *Redford v. Booker*, 166 Va. 561, 574, 185 S.E. 879 (1936). This burden, however, can shift to the proponent of the deed if (1) the grantor had a great weakness of mind when the document was executed, (2) the grantee stood in a confidential or fiduciary relationship to the grantor, and (3) the consideration was grossly inadequate. *Martin v. Phillips*, 235 Va. 523, 528, 369 S.E.2d 397 (1988).

The burden does not shift to Fitzgerald to disprove fraud and duress in the instant cases because he did not stand in a confidential or

fiduciary relationship with either Sallie Moorehead or Irene Garland. Thus, the issue is whether he has proven by clear and satisfactory evidence that the will of either Irene Garland or Sallie Moorehead was overborne by him. This has not been proven; accordingly, duress and undue influence has not been established in either of these cases.

### Fraud

Actual fraud consists of six elements: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with the intent to mislead, (5) reliance by the party misled, and (6) resulting in damage to the party misled. *Winn v. Aleda Const. Co.*, 227 Va. 304, 308, 315 S.E.2d 193 (1984). Constructive fraud has the following elements: (1) a material false representation, (2) that the hearer believed to be true, (3) that was meant to be acted on, (4) that was acted on, and (5) that caused damage and reliance thereon. *Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 629, 331 S.E.2d 490 (1985).

Concealment, as opposed to representation or misrepresentation, of a material fact by one who knows the other is acting upon the assumption that the fact does not exist, also constitutes fraud. *Allen Realty Corp. v. Holbert*, 227 Va. 441, 450, 318 S.E.2d 592 (1984).

The burden upon the party alleging fraud is to prove it by clear and convincing evidence. *Wolford v. Williams*, 195 Va. 489, 498, 78 S.E.2d 660 (1953).

The Plaintiff has not proved that fraud or constructive fraud has occurred by clear and convincing evidence. In this case, there was no evidence that Edwin Fitzgerald or anyone on his behalf made any affirmative representation or misrepresentation. Also, there was no evidence of any concealment of facts. The facts were equally available to all parties.

The Supreme Court of Virginia has held that a grantor has the duty to read a deed. Failure to read the deed will not relieve a grantor of the obligations entered into under the deed and will not constitute fraud unless the grantee prevented the grantor from reading the deed. Also, lack of consideration for a transaction does not support any inference of constructive fraud. *Carter v. Carter*, 223 Va. 505, 509, 291 S.E.2d 218 (1982).

The Plaintiffs cite the case of *Jackson v. Seymour*, 193 Va. 735, 71 S.E.2d 181 (1952), to support their argument that the transactions

should be set aside on the grounds of constructive fraud. *Jackson v. Seymour* is clearly distinguishable from the instant case because the Supreme Court of Virginia specifically found that was "not the ordinary case in which the parties dealt at arm's length." In fact, in *Jackson v. Seymour, id.* at 740, the parties were brother and sister, and the sister was relying on the judgment of the brother. In the case at bar, there is no such relationship or reliance.

Accordingly, fraud and/or constructive fraud has not been established in the instant cases.

## Mutual Mistake

The Plaintiffs allege that there was mutual mistake of fact. At best, the evidence in the case indicate that both Edwin Fitzgerald, the Plaintiffs, and the representatives and relatives of the Plaintiffs did not know clearly who all of the heirs of Julian Horace Jones were or what their exact interests were in the real estate. Even many of the recitations of the relationship of the grantors and heirs to Julian Horace Jones in the deeds of conveyance were incorrect. It is apparent from the evidence that the parties to the deed merely took their chances as to the correct heirs of Julian Horace Jones. A party seeking relief under the mutual mistake doctrine must have exercised reasonable diligence. *Hitt v. Cox*, 737 F.2d 421 (4th Cir. 1984). Also, when a party has limited knowledge and proceeds despite such knowledge, the party bears the risk of mistake. *McDevitt & St. Co. v. Marriott Corp.*, 713 F. Supp. 906 (E.D. Va. 1989).

In *Harvey v. Robey*, 211 Va. 234, 238, 176 S.E.2d 673 (1970), the Supreme Court of Virginia held that mistakes as to matters which the parties had in mind as possibilities and "as to the existence of which they took the risk" are not mistakes of fact which entitle a party to relief. In the instant case, it is abundantly clear that all of the parties took the risk that they may be incorrect about the number of heirs or the percentage of ownership. Even more, the Plaintiffs and the other owners of this property were simply negligent in not investigating this matter further. The law cannot allow them to recover for their own failure to investigate.

## Unjust Enrichment

Unjust enrichment occurs in basically two circumstances. First, it occurs when a Defendant has in his hands money which the law

presumes that he ought to refund. The second instance is when money is obtained by fraud, the law of implied contract presumes that it ought to be returned. 4B M.J., *Contracts*, § 105.

The second instance does not apply in this case. The Court has already ruled that fraud has not been proven. Thus, it must be determined whether the Defendant has money which the law presumes that he ought to return.

In *Central Nat. Bank v. First & Merchants Nat. Bank*, 171 Va. 289, 198 S.E. 883 (1938), the Supreme Court of Virginia held that "unjust enrichment" implies an altered situation, but a change in circumstances does not alone justify the right to recover even though a party may be enriched. In the instant case, there was really no altered situation, and thus, unjust enrichment cannot apply. The heirs of Julian Horace Jones and their interest in the subject real estate were established at his death. It simply took investigation to determine who those heirs were and what their interest may be. Thus, there was no situation that was altered at the time that the deeds transferring the interests of the Plaintiffs were executed. They cannot claim that the Plaintiff is unjustly enriched simply because the Defendant has paid an amount that is not a fair market consideration for the interest conveyed. There must be an alteration of the circumstances. Therefore, unjust enrichment does not apply to the instant case.

### Additional Theory of Sallie Moorehead

Sallie Moorehead alleges in her Bill of Complaint that the authority of Virginia Jones to sell her interest in the property under the power of attorney was limited only to sell her interest at a fair market price or for a reasonable price. The power of attorney, however, does not contain any written statement to this effect. Virginia Jones had apparent authority to sell the interest of Sallie Moorehead under the power of attorney. While Virginia Jones has a duty to Sallie Moorehead, the Defendant is entitled to rely upon the apparent unlimited authority of Virginia Jones to transact business under the power of attorney.

The power of attorney executed by Sallie Moorehead is a general power of attorney. *See* Plaintiff's Exhibit "E." A more liberal construction is given in favor of the agent and third persons under a general power of attorney. *Bukva v. Matthews.* 149 Va. 500, 514, 140 S.E. 674 (1927). If the maker of the power of attorney wishes to

restrict the power of the agent, it must be clearly expressed in the instrument. Otherwise broad powers granted to the agent will not be restricted. *Bukva* at 515.

The Plaintiff, Virginia Jones, cites the Restatement of Agency for the proposition that where the power of attorney does not specify terms of sale, such authority requires a sale at a reasonable price. Am. Jur. 2d, *Agency*, § 129. This, however, is contrary to the weight of authority in Virginia. In Virginia, if the maker of a general power of attorney wishes to limit the authority of the person appointed to act under the power of attorney, the maker must specifically state the limitations of authority. Otherwise, the holder of the power of attorney will be construed to have broad powers, and any injurious consequences must fall on the maker for not employing better terms. 14B M.J., *Powers*, § 4.

## Conclusion

In conclusion, the Court finds that the claims of the Plaintiffs should be dismissed for the reasons set forth in this memorandum.