# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### THE PLANTERS NATIONAL BANK OF FREDERICKSBURG, VIRGINIA, A CORPORATION, v. E. G. HEFLIN COMPANY, INC.

March 12, 1936.

Present, All the Justices.

The opinion states the case.

*C. O'Conor Goolrick,* for the appellant.

*F. M. Chichester* and *S. Bernard Coleman,* for the appellee.

HOLT, J., delivered the opinion of the court.

In 1929 the Planters National Bank of Fredericksburg, Virginia, was the owner of a small parcel of land in that city, and sold a part of it to the Richmond, Fredericksburg and Potomac Railroad. The preliminary negotiations which led to this sale were carried on for the bank through Mr. A. B. Young, its real estate agent. Formal authority for the execution of a deed was given by resolution of the board of directors on March 4, 1930. For reasons unimportant here, there was some delay. The deed itself bears date the 4th of July, 1930, and was acknowledged on July 14th of that year.

Between this lot and the main industrial line of said railroad lay another lot, also owned by the bank. It, too, had been placed for sale in the hands of Mr. Young.

The E. G. Heflin Company was operating a wood-working plant. Mr. Young tells us that:

"After the Richmond, Fredericksburg and Potomac Railroad Company had bought the lower end of it, I had in mind that Mr. Heflin wanted to move his shop. It was reported he wanted to move. I went in to see Mr. Goolrick and asked him if he wanted to sell the upper end. I am not positive about this, but am rather inclined to think Mr. Goolrick stated Mr. Heflin had already asked him the price of it."

Mr. William K. Goolrick was president of the bank, and Mr. E. G. Heflin was president of the Heflin Company.

Negotiations were begun and in February, 1930, Mr. Heflin agreed to purchase at the price of $6,500. Of this $50 earnest money was paid in cash. Sale was formally authorized by resolution of March 4, 1930. The deed itself bears date July 29, 1930, was acknowledged October 18, 1930, and recorded on January 31, 1933.

The consideration expressed was "$1,500 cash in hand paid and other valuable consideration." This other valuable consideration defendant claims was $5,000 to be thereafter paid. Plaintiff contends that it was to pay $5,000 at the end of three years and when adequate railroad facilities had been installed, which installation the bank itself promised and guaranteed. This balance due was evidenced by note of July 30, 1930, payable on or before three years from date, and secured by trust deed of even date acknowledged on October 18, 1930, and recorded on January 31, 1933. Of this $1,500 item, $50 had already been paid; for the residue a note of $1,450 was given and in a short time thereafter paid.

Both Young and Goolrick knew the purpose for which the lot was purchased—to be used as a factory site. This Heflin explained to Young and made it plain. He said: "That is the only thing I told him it could be used for."

When the deed was presented to him he found there no provisions about this spur track and consulted counsel. The matter remained in abeyance until Mr. Goolrick obtained from the railroad this letter, which Mr. Heflin read:

"September 9, 1930.

"Mr. Wm. K. Goolrick, President,
"The Planters National Bank,
"Fredericksburg, Va.
"Dear Mr. Goolrick:

"Replying to your favor of the 6th instant, this is to confirm understanding had between your bank and this company during the negotiations whereby this company purchased from your bank a piece of property in Fredericksburg conveyed by deed bearing date the 14th day of July, 1930, namely, that the railroad company is obliged to build within three years from the date of the said conveyance a spur track connected with its industrial track and reaching the remainder of the property still owned by your company just north of the property acquired by the railroad company, the location of the said track being substantially as shown on the print attached to the deed of conveyance.

"The building of this track across the several city streets will, of course, depend upon our ability to secure consent of the city of Fredericksburg and the necessary authority therefor.

"Will you kindly acknowledge receipt of this letter and oblige?

"Yours very truly,
"NORMAN CALL, Vice-President."

This letter was shown to Heflin on October 18, 1930, and thereupon the deed and deed of trust were executed.

On his cross-examination this appears:

"Q. If Mr. Young had given you this so-called guarantee in February, 1930, why did you wish anything else?

"A. I wished something else showing that they had this agreement with the railroad company, the guarantee from the bank.

"Q. Was the letter of September 9, 1930, acquired in order to show you?

"A. Yes, sir.

"Q. You acted on that letter?

"A. Yes, and the guarantee of the bank that they would see that the obligation would be carried out.

"Q. You were familiar with the contents of the letter long before you concluded the deal and signed the deed of trust?

"A. No, sir. The letter was given to me the date the deed was signed.

"Q. You read it before you signed it?

"A. Yes, sir.

"Q. You never saw the letter of September 9, 1930, until the day you executed the deed on October 18, 1930?

"A. That is right.

"Q. Where were you when you read it?

"A. As I stated, I don't know whether in Mr. Goolrick's office or in Mr. Frank Chichester's office.

"Q. Did Mr. Goolrick make any representations to you?

"A. He said the bank had received that letter and would see that it was carried out."

Heflin further tells us that Young from the beginning had promised that this side track would be built. The bank in answer says that he had no authority to make such a promise, but Goolrick, its president, did, and Heflin more than once testifies that he also as a major inducement made a like promise.

The railroad did not build this spur track nor attempt to build it, and there is fair reason to believe that it either abandoned its purpose or postponed its execution for an indefinite time. The three-year period was drawing to a close. On January 30, 1933, Heflin wrote to the bank asking what had been done. The bank made no answer. On February 3, 1933, he again wrote, complaining of the delay, and called attention to the fact that the deed and trust deed had been recorded on January 31st of that year. Still no answer was made. On June 7, 1933, the bank wrote to Heflin calling attention to unpaid interest due January 30, 1933, in amount $150. This letter he did not answer, and on June 27, 1933, the bank again wrote, said

that its last letter had not been answered and threatened suit. Heflin replied: When you answer my letter to you dated January 30th, and February 3rd, I will then answer yours of June 27, 1933."

On July 28, 1933, he wrote to the bank demanding return of payments made. This was about the time of the termination of the three-year period. Had the original plans been carried out this balance due would not have been due until the spur track had been built. Until built Heflin tells us that this lot was worthless to his company for the purpose of its purchase and that the bank must have known. We have seen that the deed and deed of trust were not recorded until January 31, 1933. Goolrick said that this delay was at the request of Heflin, who thought that its recordation would hurt his company's credit. Heflin said that he never made any such request, that his company owed nobody anything, and that Young had promised not to record these papers until this spur track was built. Probably Young had no power to make such a promise, but it is of moment to note that recordation was as a fact long delayed.

The defendant contends that no promise or guaranty of any kind was made, but that it gave to Heflin all the information which it had about the railroad's plan, and that Heflin acted upon his own judgment based upon the railroad's letter shown to him, and upon the results of a visit which he made to the railroad company's office in Richmond before the transaction was concluded. This Heflin denied, and said that his trip to Richmond was long after the contract had been executed, and contends, as we have seen, that the contract rests upon the bank's promise, and that with it alone was there any contract relations.

After the cause had been matured the presiding judge, on April 23, 1932, himself heard testimony in open court. And on October 31, 1934, apparently on his own motion ordered that an issue be made up to be tried at the bar of court, the issue being whether or not the deed and deed of trust were delivered absolutely or upon condition. To

the issues thus framed the Heflin Company objected on the ground that there had been a total failure of consideration. In short, that there had been misrepresentations and that guaranties given had not been fulfilled. Afterwards on December 11, 1934, the court set aside its order for an issue out of chancery and proceeded to finally dispose of this cause upon its merits. It directed that the deed and deed of trust be canceled and that the payments made be refunded. The bank took back its lot and the Heflin Company the money which it had paid.

Relative to the issue, the presumption is that the chancellor properly exercised the discretion vested in him. He is the keeper of his own conscience.

"It is not necessary to multiply authorities. They are unanimous to the effect that the matter is one resting within the sound judicial discretion of the court." *Massie* v. *Parrish,* 140 Va. 717, 125 S. E. 691, 694.

The mere fact that there is conflict in testimony is not enough. *Stevens* v. *Duckett,* 107 Va. 17, 57 S. E. 601; *Bunkley* v. *Commonwealth,* 130 Va. 55, 108 S. E. 1; *Hunter* v. *Bane,* 153 Va. 165, 149 S. E. 467; *Barbour* v. *Barbour,* 155 Va. 650, 156 S. E. 365.

Here the chancellor saw the witnesses and heard the testimony.

"The decree appealed from, upon a conflict of the evidence heard in open court, has the same weight as the verdict of a jury. *Howren* v. *Howren,* 164 Va. 141, 178 S. E. 678, 679; *Hartman* v. *Melfa Banking Co.,* 162 Va. 433, 436, 174 S. E. 653. It is binding on us unless it is 'plainly wrong or without evidence to support it.' Code, section 6363; *Amos* v. *Franklin,* 159 Va. 19, 22, 165 S. E. 510." *Williamson* v. *Johnson,* 164 Va. 632, 637, 180 S. E. 310, 312.

If there is credible evidence to support the chancellor's judgment we must accept it, just as we must accept a jury's verdict sustained by evidence which it might have believed. *Duncan* v. *State Highway Commission,* 142 Va. 135, 128 S. E. 546; *Safety Motor Transit Corporation* v. *Cunningham,* 161 Va. 356, 171 S. E. 432; *Wright* v. *Viar,*

162 Va. 510, 174 S. E. 766; *Margiotta* v. *Aycock,* 162 Va. 557, 174 S. E. 831.

What is the evidence which supports or tends to support the trial court?

The plaintiff wished to locate its wood-working plant on some lot furnished with adequate transportation facilities, and made known its desire to the defendant's agent. It told him that without such facilities this lot would be worthless to it. The bank knew of these negotiations and kept in touch with them. It furnished Young with a blue print which Heflin was to see showing the switch and its location. It is true that in the letter of September 9, 1930, there was a promise by the railroad to do this work, but it is also true that Heflin did not complete his purchase until the bank had in addition guaranteed that the railroad would comply with its conditional obligation.

Heflin was dealing with the bank and relied upon it. It is fair to assume that he would not have made the purchase had it kept silent. Not only did it not keep silent, but it added to the railroad's promise its express guaranty. That is to say, the building of this switch was an inducing cause, without which the contract would not have been consummated. The value of adequate transportation facilities to manufacturing enterprises is a matter of common knowledge. Heflin tells us that without them this lot is worthless to his company.

Just why the track was not put in we do not know, but we do know that nothing yet has been done about it and apparently nothing will be done about it. The three-year period is long past.

Has there been a failure of consideration? Mere failure of consideration or want of consideration will not ordinarily invalidate an executed contract. The owner of the historic estate of "Blackacre" can give it away, and he can sell it for a peppercorn. Courts, though they have long arms, cannot relieve one of the consequences of a contract merely because it was unwise. They are not guardians in general to the people at large, but where

inadequacy of price is such as to shock their conscience equity is alert to seize upon the slightest circumstance indicative of fraud, either actual or constructive. *Texas Company* v. *Northup,* 154 Va. 428, 153 S. E. 659; 2 Pom. Eq. Jur. (2d Ed.), sec. 928. Here we have an executory consideration which failed; something of major importance was to be done thereafter which was not done. We do not mean to say that any actual purpose to defraud was ever present. Naturally, Mr. Goolrick thought that he could rely upon the railroad's promise and that his bank with perfect safety could guarantee its fulfillment, but none of these undertakings have been fulfilled. A promise in good faith so made by the bank is as hurtful as it would have been were it made with a purpose to deceive. So far as Heflin is concerned he was induced by it to purchase a lot worthless for his purpose. Constructive fraud may be as harmful as actual fraud. *Chandler* v. *Russell,* 164 Va. 318, 180 S. E. 313; *Trust Company* v. *Fletcher,* 152 Va. 868, 148 S. E. 785, 73 A. L. R. 1111.

██ It is of course true that fraud must be established by clear and convincing evidence, but that rule applies to the court below and not to this court when it comes to consider the verdict of a jury approved by the trial court, the judgment of the court itself when all matters of law and fact are submitted to it, or the judgment of a chancellor who saw the witnesses and heard them testify. If we consider testimony *de novo* we would sit as a court of original jurisdiction and not as one of appeal. Conceding for the sake of argument only that we would have reached a different conclusion from that reached by the chancellor, it is still our duty to sustain his judgment if it rests upon substantial and credible evidence. Plaintiff's case does not rest upon opinion nor upon results of its own investigation or judgment, but does rest upon a promise made by the railroad and a promise made by the bank. Each was an inducing cause of its purchase. The railroad was a stranger to the transaction, and it was doubtless for this reason that he relied upon and obtained

the promise of the bank also. Young made the same promise which the bank made and conceding that he was originally without authority all that he did was in that manner ratified.

The cause of *Texas Company* v. *Northup, supra,* sustains principles like those now in judgment. Northup was the owner of a wharf property on which were Texaco gas tanks. As distributor for that company he had built up a large business. He leased this wharf to the Texas Company for a sum almost nominal. The Texas Company gave to Northup a license to occupy the wharf and to use equipments there. The licensor reserved the right to cancel this license upon the termination of a sales contract then in force. This sales contract provided for the delivery of the Texas Company's products to Northup in equal quantities monthly. It was for one year, subject to cancellation upon thirty days' notice, while the lease and license contract ran for five years. It was held that the Texas Company had no right to cancel the sales contract and license and to retain the wharf property under lease, that these contracts were part and parcel of one transaction, that the company could not take from Northup the right to sell its gas and oil and yet hold the lease. In other words, it held that the right to continue to do business was an executory consideration promised to Northup and not to be disregarded.

This is headnote No. 12 of that case sustained by the text:

"In the instant case appellant was an oil company and appellee a distributor. Three papers were executed by the parties. These papers bore different dates but were executed by appellee on the same date. The first was a sales contract. The second was a lease by appellee to appellant of a wharf property used as a bulk station for a nominal rent, and the third was a license permitting appellee to occupy the wharf property. The sales contract was for one year, subject to cancellation by either party upon thirty days notice. The lease and license con-

tracts were for five years, subject to termination by appellant. If upon execution of these papers it was not the purpose of the company in drawing the lease to enable it to cancel sales and license contracts without canceling the lease, and the purpose to take such an unconscionable advantage of the appellee was an afterthought, then this is constructive fraud, the insistence upon an unconscionable bargain which a court of equity will not sanction. If it was the purpose of the company to cancel sales and license contracts without canceling the lease, this was actual fraud."

Northup would not have leased his wharf but for the sales and license contract, just as Heflin would not have purchased this lot but for the bank's guaranty.

■ We have taken this case upon its merits and so have not undertaken to pass upon a motion to dismiss, in which it is charged that the evidence heard *ore tenus* has not been properly authenticated or identified by the trial judge. Attention of the profession is called to the necessity for this. *Ross Cutter & Silo Co.* v. *Rutherford,* 157 Va. 674, 161 S. E. 898; *Amos* v. *Franklin,* 159 Va. 19, 165 S. E. 510; *Nethers* v. *Nethers,* 160 Va. 335, 168 S. E. 428.

The decree appealed from should be affirmed, and it is so ordered.

*Affirmed.*