# Richmond

## LUCY S. JACKSON v. BENJAMIN J. SEYMOUR.

June 16, 1952.

Record No. 3912.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*M. C. Dortch* and *L. J. Hammack,* for the appellant.

*A. S. Harrison, Jr.,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

In May, 1950, Lucy S. Jackson filed her bill of complaint in the court below praying for rescission of a deed dated February 18, 1947, and recorded the next day, whereby she had conveyed to her brother, Benjamin J. Seymour, a tract of thirty-one acres of land in Brunswick county. In substance she alleged that she had been induced by her brother to convey the land to him for the sum of $275, through his representations to her that it was "of no value except for a pasture" and that that amount was "a good price therefor;" that relying upon the representations of her brother, in whom she reposed complete confidence with respect to his management of her property and business affairs, and being unfamiliar with the land and unaware that there was merchantable timber growing thereon, she had conveyed it to him at that price; that about two and one-half years later she discovered for the first time that at the time of the execution and delivery of the deed there was on the land considerable merchantable timber, of the stumpage value of from $3,200 to $5,000, and that subsequent to his acquisition of the land her brother had cut and sold the timber at a price unknown to her, but with considerable profit to himself.

She further alleged that the statements and representations made to her by her brother, through which she had been induced to sell him the land, were "false and were fraudulently made;" that she had offered to restore to him the amount of the purchase price which he had paid for the property, with interest, upon the condition that he would rescind the transaction, and that he had rejected this offer.

The prayer of the bill was that the deed be canceled and that the defendant be required to account to her for all moneys which he may have realized from the sale of the timber taken from the land. There was also a prayer for general relief.

In his answer the defendant admitted having purchased the property from the plaintiff for the stated sum of $275, but denied that he had made any representations to her that that was the fair value of the land or that it "had no value except for a pasture." He alleged that he had purchased the property from her at her urgent request and for her accommodation, and that at the time he had no knowledge "of the existence of merchantable timber upon said land."

The answer further denied all charges of fraud or misrepresentations. The defendant admitted that since he had acquired the property he had cut and marketed from this and an adjoining tract of land 148,055 feet of timber, from which he had realized the sum of $2,353.42. He denied the plaintiff's right to have the deed rescinded or to have an accounting by him of the amounts received from the sale of the timber taken from the land.

After the issues had thus been made up the court heard the evidence *ore tenus*. On the issue of actual fraud, alleged in the bill and denied in the answer, the evidence on behalf of the parties tended to support their respective allegations. Inasmuch as the trial court's findings of fact are binding on us the evidence will be summarized from the viewpoint most favorable to the defendant.

Since 1931 Mrs. Jackson had been the owner of a farm of 166 acres in Brunswick county which adjoined lands owned by her brother, Benjamin J. Seymour, the defendant. After the death of her husband (the date of which is not shown in the record) Mrs. Jackson sought and obtained the assistance of her brother, who is a successful farmer and business man, in renting the farm for her. He rented the tillable portions of the farm,

collected the rents, and made settlements with her which she never questioned. Up to the time of the transaction with which we are concerned they were devoted to each other and she had, as she says, "the utmost confidence in him."

In 1946 Tazewell Wilkins approached Seymour about the purchase of a tract of Seymour's land containing 30.46 acres for a pasture. He also wanted to buy the adjoining tract of 31 acres, which was a part of the land owned by Mrs. Jackson. Seymour told Wilkins that while he was willing to take $275 for his (Seymour's) land, he did not own the 31-acre tract and suggested that Wilkins see Mrs. Jackson about buying it. While Seymour also conveyed this information to Mrs. Jackson the record discloses no negotiations between Wilkins and Mrs. Jackson for the purchase of her land.

In February, 1947, Mrs. Jackson approached her brother, saying that she was in need of funds and was anxious to sell the 31-acre tract in which Wilkins had shown interest. Seymour did not want to buy the property, but because of his sister's need for money he agreed to purchase it at $275, which was the price which had been mentioned in his negotiations with Wilkins. The brother was then unaware that there was valuable timber on the land and contemplated using it for a pasture. Seymour gave his sister a check for $275 and she signed a receipt therefor. On the next day Mrs. Jackson executed and delivered a deed conveying the property to her brother. The deed was prepared by a local attorney at Seymour's request and expense.

A short while after Seymour had acquired the property it came to his attention that some trees had been cut from the tract. Upon investigation he discovered for the first time that there was valuable timber on the land.

The evidence does not disclose the exact quantity and value of this timber. It shows that in 1948 Seymour cut from the land which he had purchased from his sister and from adjoining lands owned by him, 148,055 feet of lumber and that the greater portion of this came from the Jackson tract. This timber had a stumpage value of approximately $20 per 1,000 feet.

The land in controversy is located in an isolated section and it is undisputed that Mrs. Jackson had never been on it and knew nothing of its character. While Seymour had hunted in the vicinity and been within sight of the property he had never actually been on the land. To use his own words, "I was positive

that it was just naked land'' and worth $8 or $9 an acre. Thus, neither vendor nor vendee knew that there was valuable timber growing on the land.

On cross-examination Seymour admitted that the presence of timber on the land ''was not within the contemplation'' of him and his sister at the time the sale was consummated. He testified that if he had known of this timber he would not have bought the property from her for $275.

After Mrs. Jackson discovered that her brother had cut and marketed valuable timber from the land she demanded an accounting from him of the profits derived therefrom. When this demand was refused the present litigation followed.

Upon the conclusion of the evidence the lower court dictated from the bench an opinion holding that the plaintiff's allegations of *actual* fraud had not been sustained by the evidence and that consequently she was not entitled to rescission of the deed on that ground. It took under advisement whether under the allegations of the bill the plaintiff was entitled to relief on the ground of *constructive* fraud because of the ''confidential relationship'' of the parties and the ''gross inadequacy in price.''

While the court had the matter under consideration the plaintiff tendered an amendment to her bill which in substance charged that she was unfamiliar with the character of the land, was unaware that there was any merchantable timber on it, that she had sold it ''under an honest and material mistake of fact with reference to the subject matter of the contract,'' and that to permit the deed to stand ''would operate as a fraud'' upon her rights.

There was no allegation that the vendee, as disclosed by his own testimony, was likewise mistaken as to the existence of timber on the land at the time the sale was consummated. Thus the amendment fell short of alleging a mutual mistake of the parties with reference to the subject matter of the contract.

About sixty days after the amendment had been tendered the lower court rejected it on the ground that it had been ''tendered too late under the peculiar circumstances'' of the case. It further held that since the plaintiff had grounded her case on actual fraud, and since the evidence adduced by her had failed to sustain that charge or make out a case within the scope of the bill, she was not entitled to the relief prayed for. From a de-

cree embodying this holding and dismissing her bill the plaintiff has appealed.

Under our view of the case it is unnecessary that we deal with the assignment that the lower court erred in rejecting the amendment to the bill. We are of opinion that under the evidence, viewed in the light of the trial court's determination of the issues of fact favorable to the defendant, the plaintiff is entitled to equitable relief on the ground of constructive fraud, and that such relief is within the scope of the allegations of the original bill of complaint.

The undisputed evidence shows that shortly after the defendant had acquired this tract of land from his sister for the sum of $275, he cut and marketed therefrom timber valued at approximately ten times what he had paid for the property. A mere statement of the matter shows the gross and shocking inadequacy of the price paid.

This is not the ordinary case in which the parties dealt at arm's length and the shrewd trader was entitled to the fruits of his bargain. The parties were brother and sister. He was a successful business man and she a widow in need of money and forced by circumstances, according to the defendant's own testimony, to sell a part of the lands which she had inherited. Because of their friendly and intimate relations she entrusted to him and he assumed the management and renting of a portion of this very land. He engaged tenants for such of the land as could be cultivated and collected the rents. She accepted his settlements without question.

Moreover, it is undisputed that neither of the parties knew of the timber on the land and we have from the defendant's own lips the admission that as it turned out "afterwards" he had paid a grossly inadequate price for the property and that he would not have bought it from her for the small amount paid if he had then known of the true situation.

To hold that under these circumstances the plaintiff is without remedy would be a reproach to the law. Nor do we think that a court of equity is so impotent.

The controlling principles were thus stated in *Planters Nat. Bank* v. *Heflin Co.*, 166 Va. 166, 173, 174, 184 S. E. 216, 219: "* * * Mere failure of consideration or want of consideration will not ordinarily invalidate an executed contract. The owner of the historic estate of 'Blackacre' can give it away, and

he can sell it for a peppercorn. Courts, though they have long arms, cannot relieve one of the consequences of a contract merely because it was unwise. They are not guardians in general to the people at large, but where inadequacy of price is such as to shock their conscience equity is alert to seize upon the slightest circumstance indicative of fraud, either actual or constructive.'' See also, *Texas Co.* v. *Northup,* 154 Va. 428, 153 S. E. 659; 9 Am. Jur., Cancelation of Instruments, § 24, p. 370 *ff.*

█ In *Texas Co.* v. *Northup, supra,* we quoted with approval this definition by Lord Thurlow of the gross inadequacy of consideration as indicating constructive fraud: " 'An inequality so strong, gross and manifest that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it, '* * * *Gwynne* v. *Heaton,* 1 Bro. Ch. 1, 9; 28 Rep. 949.'' (154 Va., at page 443.)

Clearly the inadequacy of consideration here meets that definition.

In addition to the gross inadequacy of consideration we have the confidential relation of the parties, the pecuniary distress of the vendor, and the mutual mistake of the parties as to the subject matter of the contract. Unquestionably, we think, to permit the transaction to stand would result in constructive fraud upon the rights of the plaintiff. Hence, she is entitled to relief in equity.

To grant a rescission of the deed, under the circumstances here, does no violence to the principle that the relief granted must conform to the case made out in the bill of complaint. While the bill alleges actual fraud, it also contains allegations of these constituent elements of constructive fraud: The confidential relation of the parties; the reliance by the plaintiff upon the advice and judgment of the defendant in her business affairs; the gross inadequacy of the price paid; her offer to restore the purchase price and rescind the transaction, and his rejection of the offer.

█ In *Moore* v. *Gregory,* 146 Va. 504, 131 S. E. 692, we quoted with approval this definition of constructive fraud as written in 26 Corpus Juris, Fraud, § 4, p. 1061 (now found in 37 C. J. S., Fraud, § 2-c, pp. 211, 212): " 'Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence,

or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. An intent to deceive is an essential element of actual fraud. The presence or absence of such an intent distinguishes actual fraud from constructive fraud.' '' (146 Va., at page 523.)

In the same case we said: ''Constructive fraud may be inferred from the intrinsic nature and subject of the bargain itself.'' (146 Va., at page 527.)

It is true that there is no specific allegation in the bill here that the circumstances under which the defendant acquired the property amounted to constructive fraud, but such allegation would have been merely the conclusion of the pleader which necessarily flows from the facts alleged. See *Hull* v. *Watts,* 95 Va. 10, 13, 27 S. E. 829; *Southeast Lumber Export Co.* v. *Friend,* 158 Va. 863, 868, 869, 164 S. E. 372.

Moreover, in its written opinion rejecting the amendment to the bill the trial court treated the allegations of the original bill as sufficiently broad to cover a case of constructive fraud and held that the evidence adduced was insufficient to warrant the relief prayed for on that ground. It said: ''If it be conceded that the complainant's bill sufficiently states a case for relief on grounds other than actual fraud as charged therein, or that the amendment petitioned for should be allowed and, if allowed, would state a case for such relief, the relief contended for in either event would not be warranted by the evidence.''

We are, therefore, of opinion that the lower court should have entered a decree granting the plaintiff's prayer for a rescission of the conveyance and restoring the parties to the *status quo* in so far as practicable. By way of incidental relief the plaintiff is entitled to recover of the defendant the fair stumpage value of the timber removed by the latter from the land,[1] with interest from the date of such removal, and the fair rental value of the property during the time the defendant was in possession.[2] The defendant is entitled to a return of the purchase price paid by him, with interest from the date that the plaintiff offered to rescind the transaction,[3] and taxes paid by him on the land[4] since the date of the conveyance, with interest.

[1] 12 C. J. S., Cancellation, etc., § 79, p. 1091.
[2] 12 C. J. S., Cancellation, etc., § 79, pp. 1089, 1090; *Irick* v. *Fulton,* 3 Gratt. (44 Va.) 193, 196.
[3] *Lee* v. *Laprade,* 106 Va. 594, 601, 56 S. E. 719, 117 Am. St. Rep. 1021, 10 Ann. Cas. 303; *Irick* v. *Fulton, supra.*
[4] 12 C. J. S., Cancellation, etc., § 83, pp. 1098, 1099.

The decree appealed from is reversed and the cause remanded for further proceedings in conformity with the views here expressed.

*Reversed and remanded.*